# EXHIBIT B

INDEX NO. 814444/2021E
RECEIVED NYSCEF: 11/05/2021

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 2 of 19

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

JULIANNA CZERNYK,

                        Plaintiff,

        -against-

MICHAEL BONGIOVANNI,

                        Defendant.

Index No. 814444/2021E

**VERIFIED AMENDED
COMPLAINT
AND JURY DEMAND**

Plaintiff Julianna Czernyk, by her attorneys Crumiller P.C., as and for her amended complaint against Defendant Michael Bongiovanni, alleges as follows:

### PRELIMINARY STATEMENT

1.     26.4% of female college students experience rape or sexual assault through physical force, violence, or incapacitation.[1] Unfortunately, only 20% of female student victims report the incident.

2.     Julianna Czernyk does not want to be another statistic.

3.     Czernyk is a 22-year-old recent graduate of Fordham University's Gabelli School of Business, whose world was turned upside down in October 2020 after her former classmate, Defendant Michael Bongiovanni, targeted Czernyk while she was at a party, lured her to his apartment, said nothing while she vomited for hours in his bathroom, watched her stumble out of the bathroom unable to walk, convinced her to sleep in his bed, and then raped her in the middle of the night.

4.     That fateful night, Defendant deprived Czernyk of her autonomy, control, and feelings of self-worth.

---

[1] *See* https://www.rainn.org/statistics/campus-sexual-violence (last accessed October 19, 2021).

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 3 of 19

INDEX NO. 814444/2021E
RECEIVED NYSCEF: 11/05/2021

5.      Czernyk was profoundly emotionally impacted and had no way to cope with the trauma she experienced. She tried to pretend the rape never happened and began engaging in self-destructive behavior, retreating from her friends, her classes, her extracurriculars, and her family. In July 2021, she was institutionalized in a psychiatric facility for having suicidal intentions.

6.      In March 2021, Czernyk finally found the courage to report Defendant to Fordham University. Unfortunately, the University's response was severely inadequate.[2]

7.      In the following weeks, Defendant was able to graduate from Fordham University with an unblemished academic record, and enrolled as a full-time law student at the New York Law School.

8.      Czernyk will no longer be Defendant's victim, and will not be threatened into silence. Czernyk brings this action against Defendant for gender motivated violence, assault/battery, and intentional infliction of emotional distress under the laws of New York State and New York City.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper pursuant to CPLR § 301 et seq. because at all relevant times, Plaintiff and Defendant resided in Bronx County, New York.

10.     Venue is appropriate pursuant to CPLR § 503(a) on the basis that the events giving rise to these claims occurred in Bronx County.

---

[2]      Fordham University conducted an investigation where several witnesses corroborated that Czernyk was indeed severely intoxicated that evening and messages that corroborated that Czernyk and Defendant had intercourse that night; nonetheless Fordham University bizarrely chose not to penalize Bongiovanni for his actions.

INDEX NO. 814444/2021E
RECEIVED NYSCEF: 11/05/2021

## THE PARTIES

11.     Plaintiff Julianna Czernyk is a twenty-two-year-old woman who resides in New York State. At the time of the conduct that gives rise to this action, Plaintiff was a student of Fordham University, Rose Hill, located in Bronx County, New York.

12.     Defendant Michael Bongiovanni is, upon information and belief, a twenty-two-year-old man who, until May 2021, resided in Bronx County, New York. At the time of the conduct that gives rise to this action, Defendant was a student of Fordham University, Rose Hill, located in Bronx County, New York. Upon information and belief, Bongiovanni currently resides in New York, New York.

## FACTUAL BACKGROUND

13.     Czernyk graduated from Kennedy Catholic High School with honors and was offered enrollment at every single college she applied to.

14.     Upon going to Fordham University on a college tour, Czernyk immediately sensed it was the right fit for her. Czernyk dreamed of being Chief Executive Officer of her own asset management firm specializing in Environmental, Social, and Governance ("ESG"). She loved Fordham's focus on business opportunities for young female students, its proximity to New York City, and the support it offered students throughout their tenure.

15.     In Fall 2017, Czernyk became a student of the Gabelli School of Business at Fordham University to pursue a Bachelor's degree in accounting and finance.

16.     Czernyk was a bright student and earned good grades, always maintaining above a 3.3 grade point average every semester at Fordham. Czernyk's hard work paid off, and she participated in coveted internships throughout college, including in the financial advisory

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 5 of 19

department of the asset management firm Lazard, Ltd., the hedge fund White Elm Capital, and the accounting department of the corporation SAVIN Engineers, P.C.

17. Additionally, Czernyk enjoyed a vibrant social life and was an active student on campus. Prior to October 2020, Czernyk enjoyed spending her free time playing on Fordham's club squash team, participating in Fordham Women's Business Club, Fordham's Alternative Investment Club, and the St. Rose Garden's Club (a sustainability club). Off campus, Czernyk volunteered at local food pantries as well as the Ukrainian scouting organization.

18. Indeed, Czernyk excelled academically and thoroughly enjoyed her college experience until she was raped by another classmate during her Senior year at Fordham University.

19. In Fall 2020, Czernyk began her Senior year at Fordham University.

20. Czernyk was especially excited for the school year, particularly after the previous semester (in which Czernyk was studying abroad in London, United Kingdom) was cut short following the COVID-19 outbreak, in which all Fordham students had to transition to online learning and cease their in-person interactions immediately.

21. Czernyk moved into an off-campus apartment near her classes, and was looking forward to reconnecting with her friends and colleagues on campus.

### *Defendant Targets Czernyk at a Party, Czernyk Deflects His Advances*

22. On or around October 24, 2020, Czernyk was invited to two parties at two different friends' apartments. Czernyk wanted to see both friends, and so decided to go to one party for the beginning of the night, and then walk one and a half blocks to the second party before returning home for the night.

23. Czernyk was in the midst of ending a complicated romantic relationship at the time, and planned on spending the night out with her friends. She had no intention of flirting or being

INDEX NO. 814444/2021E

RECEIVED NYSCEF: 11/05/2021

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 6 of 19

sexually active that night. To that end, Czernyk dressed in jeans and an oversized sweatshirt that belonged to her ex-boyfriend.[3]

24.     Czernyk intended to drink alcohol throughout the night, but did not want to drink to the point where she felt out of control. Czernyk was a social drinker and was very familiar with the extent to which alcohol impacted her and how much she should drink to get to the level of intoxication she wanted. Prior to leaving her apartment, Czernyk ate dinner and mixed herself a cocktail of whiskey and Coca-Cola and packed it along with two light beers for the evening.

25.     Czernyk left her apartment at approximately 8:00 pm. She had no idea she would not be returning to her own bed that night.

26.     Czernyk went directly to her friend's, Vendala Dente's, apartment around 9:00 p.m. Approximately 25 students were present, and situated throughout the inside of the apartment as well as on her outdoor patio.

27.     Shortly after arriving, Czernyk walked out to the apartment's outdoor patio, where several of her friends were hanging out and other Fordham students were playing drinking games.

28.     Czernyk saw Bongiovanni and his six roommates playing beer pong, a drinking game.

29.     Czernyk had not interacted with Defendant prior to this evening, but was aware of him and knew he was also a senior-year Fordham student who lived with several other Fordham students.

30.     While Czernyk was talking with her friends on the back patio, Defendant cornered her. Defendant simultaneously put his hand on her back without her consent and told her, in sum and substance, that he wanted to sleep with her.

---

[3]      Irrespective of what Czernyk was wearing, Defendant's behavior was unwanted and abhorrent.

INDEX NO. 814444/2021E
RECEIVED NYSCEF: 11/05/2021

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 7 of 19

31.     Czernyk recoiled at Defendant's touch and moved away so he could no longer touch her and explained to Defendant that she was not interested in hooking up with him.

32.     Czernyk also explicitly told Defendant that the sweatshirt she was wearing belonged to her boyfriend and she was wearing it because she felt heartsick for him, to dissuade Defendant from continuing to flirt with her or attempt to hook up with her that evening.

33.     Czernyk ended the interaction by declining Defendant's advances, and proceeded to avoid him for the duration of the party.

### *Defendant Stalks Czernyk and Follows Her to a Second Location*

34.     After spending approximately two hours at Dente's apartment, Czernyk told Dente that she was leaving and going to the apartment of a mutual friend of theirs, Michael Rinko ("Rinko").

35.     At approximately 11:00p.m., Czernyk then walked to Rinko's apartment alone.

36.     When Czernyk arrived at Rinko's apartment, she immediately took off her shoes. Czernyk was close with Michael Rinko, as well as the other students who lived in the apartment, and knew that he had a strict "no shoe policy" in his apartment.

37.     Approximately 25 other students were spread out around Rinko's apartment when Czernyk arrived.

38.     Approximately 10 minutes after she arrived, Czernyk saw Defendant in Rinko's apartment.

39.     Czernyk was confused by Defendant's presence at Rinko's. She did not invite Defendant, she did not arrive with him, and, to the best of Czernyk's knowledge, Rinko and Defendant were not friends. Defendant also did not appear to be friends with anyone at this party.

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 8 of 19

40.     It became readily apparent to Czernyk that Defendant had followed her to Rinko's apartment without her knowledge.

41.     As the night progressed, Czernyk socialized with friends, sipping on the mixed drink she brought with her.

42.     Meanwhile, Defendant became more and more focused and aggressive towards Czernyk. As the night went on, Defendant lingered over her and touched her back and buttocks without her consent.

43.     Rinko, sitting nearby, witnessed this groping and intervened.

44.     Rinko accused Defendant of touching Czernyk inappropriately and physically separated them.

45.     Another student who witnessed this exchange also became concerned and asked Czernyk if she was okay.

46.     Shortly thereafter, Czernyk decided to walk back to her own apartment, which was about two blocks away.[4]

47.     She planned to smoke at her apartment and walk back to Rinko's shortly after.

48.     Czernyk walked back from Rinko's apartment and returned to her own apartment. She believed she was completely alone on the walk.

49.     As Czernyk put her key in the door to enter her apartment, she suddenly heard Defendant behind her ask "what are you going to do?"

50.     Czernyk was understandably startled and became instantly uncomfortable. She could not believe that Defendant silently followed her to her home without her knowledge.

---

[4]     Czernyk was aware that Michael Rinko did not permit guests to smoke inside his apartment.

51.    Defendant then stepped forward, pinning Czernyk up against the front door of her apartment building and said, "come back to my house, my roommates will smoke you up," implying that his roommates would give her marijuana.

52.    Czernyk was in an extremely difficult situation. She did not want to lead Defendant to her own home – where she would be alone in her apartment with no one to help her if Defendant tried to get aggressive again. Czernyk knew that at least if she went to Defendant's apartment, there would be several of her Fordham classmates present, rather than to let him into her own apartment, where no one else was.

53.    Defendant coerced Czernyk to follow him to his own apartment.

54.    Czernyk reluctantly agreed to go to Defendant's apartment.

### *Defendant Ignores Czernyk's Heavily Intoxicated State, Sexually Assaults Her*

55.    When Czernyk and Defendant arrived at his apartment, she stayed in the kitchen on the first of three floors.

56.    Czernyk wanted to smoke quickly and then leave so she could return to Rinko's apartment to be with her friends.

57.    Defendant offered Czernyk a bong to smoke marijuana. She took two inhales from the bong and suddenly became extremely ill.

58.    Czernyk asked Defendant to direct her towards the bathroom and, unable to talk, signaled that she needed to vomit immediately.

59.    Defendant lured Czernyk upstairs to the third floor, to the bathroom adjacent to his bedroom.[5]

---

[5]    Czernyk later learned that there was a much closer bathroom adjacent to the shared living room of the apartment on the ground floor where she had been sitting. Upon information and belief, Defendant brought Czernyk upstairs to use the bathroom closer to his bedroom so that he could more easily get her into his bed.

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 10 of 19

60.     At approximately 1:30 a.m., upon entering the bathroom, Czernyk immediately vomited into the toilet.

61.     Czernyk continued to throw up for the next three hours – emptying her stomach of all the food she had eaten that day and then, when there was no solid food left to throw up, bile.

62.     Czernyk attempted to drink a glass of water but immediately vomited it back up.

63.     Czernyk took out her phone to call her friend, Isabel Murphy, but was too intoxicated to successfully enter her password or use her phone's FaceID feature to unlock her phone.

64.     Czernyk tried several times to use her phone while she was sick, but would experience vertigo and become extremely nauseous each time she looked at her phone. She eventually gave up on trying to use her phone to call her friend.

65.     Czernyk continued to experience intense vertigo and nausea for hours.

66.     Defendant came into the bathroom multiple times while Czernyk was throwing up. Each and every time, Czernyk told Defendant to leave her alone and get out of the bathroom.

67.     Defendant ignored Czernyk's requests.

68.     Instead of leaving her alone, Defendant placed his hand on her back while she continued to dry-heave into the toilet.

69.     Czernyk then yelled at Defendant that she didn't want to be touched by him. He continued to ignore her.

70.     At approximately 4:30 am, Czernyk finally stopped throwing up and realized she needed to get out of the apartment.

71.     She explicitly told Defendant she wanted to go home.

72.     Czernyk attempted to stand up to leave, but she could not keep her balance and had to brace herself against the wall of the bathroom.

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 11 of 19

73.     Defendant told Czernyk to spend the night in his room.

74.     Czernyk tried to protest, and repeated that she wanted to go home.

75.     She tried to stand up several more times, but was still too inebriated to walk.

76.     Czernyk then crawled to Defendant's bedroom. When she reached the bedroom, she sat on the bed and Defendant gave her a glass of water, which she immediately spilled all over the bed.

77.     Czernyk, being fully clothed, and with her shoes still on, then wrapped herself in a red blanket she found on the bed, and passed out on top of Defendants' bedding. The lights in the bedroom were still on.

78.     Czernyk was intoxicated to the point where she was helpless and could not give consent.

79.     When Czernyk regained consciousness, the lights were off and she was completely naked and Defendant was on top of her, having sex with her in his bed.

80.     Czernyk was in complete shock and felt as though she could not move or speak.

81.     After approximately 20-30 seconds, Czernyk blacked out again.

82.     The next thing Czernyk remembers is being in the fetal position with Defendant holding her face and forcing her to perform oral sex on him. Defendant was thrusting his penis down Czernyk's throat, causing her to gag and become nauseous.

83.     Shortly after she regained consciousness, Defendant pulled his penis out of her mouth, took out a condom, and put the condom on.

84.     Czernyk, gagging and nauseous from being forced to perform oral sex on Defendant, fell over, and lost consciousness again.

INDEX NO. 814444/2021E
RECEIVED NYSCEF: 11/05/2021

Case 1:21-cv-10429-JGK    Document 2-2    Filed 12/08/21    Page 12 of 19

### *Czernyk Regains Consciousness and Returns Home to Put the Pieces Together*

85.    At approximately 7:20 am, Czernyk briefly regained consciousness again and felt extremely fatigued from vomiting the night prior.

86.    Czernyk hazily looked around the bedroom and saw an open box of blue Trojan condoms on the desk at the foot of the bed.

87.    Czernyk searched around the bed for her phone, found it tucked away in a cubby nearby, and then lost consciousness again.

88.    At approximately 11:00am on October 25, 2020, Czernyk woke up again, completely unaware of where she was or who she was with. She was in bed that was against the wall, and pinned between the wall and Defendant. She could not move.

89.    Czernyk was extremely alarmed because she was naked, even though she had no recollection of how she became undressed.

90.     Czernyk looked around for her clothes and belongings, but could not see them. She shook Defendant awake and tried to get Defendant to let her leave the apartment. She apologized for throwing up in his bathroom and said she wanted to leave.

91.    As she walked to the front door of the apartment, Defendant's roommates, who were sitting around the kitchen table, saw her and started clapping in a manner obviously meant to congratulate Defendant for having sex with her. Czernyk was appalled and left as quickly as she could.

92.    Still feeling extremely unwell, Czernyk returned home and took her clothes off, used the bathroom, and went back to sleep.

INDEX NO. 814444/2021E

RECEIVED NYSCEF: 11/05/2021

93.     Czernyk slept through the entire day and woke up in the evening, when she immediately texted her friends and told them that she and Defendant had sex.

94.     Defendant's sexual assault caused Czernyk devastating emotional distress.

95.     Immediately following the sexual assault, Czernyk went through a manic episode in which she engaged in extremely destructive behavior every weekend – losing all control and drinking and smoking to excess.

96.     Also after the sexual assault, Czernyk developed a severe eating disorder in which she stopped eating entirely.

97.     This self-destructive behavior helped Czernyk numb the pain she was experiencing and helped her avoid reckoning with the trauma Defendant had caused her.

98.     When she was not going out, Czernyk was unmotivated and would stay in bed all day, day after day.

99.     Czernyk also became extremely antisocial and reclused from all her friends.

100.    In the months following, Czernyk continued to experience long bouts of depression and sadness, difficulty sleeping, extreme anxiety, and panic attacks.

101.    Czernyk's anxiety was so severe that it manifested into habitual vomiting, panic attacks, and hyperventilation, often occurring multiple times a week.

102.    Czernyk's sleeping habits were disrupted by her extreme emotional distress and she developed a co-occurrence of insomnia and hypersomnia.

103.    Czernyk's grades, which were usually excellent, suffered as Plaintiff lost focus during her periods of emotional and psychological distress.

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 14 of 19

***Psychological Impact of the Sexual Assault and Defendant's Retaliation Against Czernyk***

104.     In March 2021, Czernyk finally sought treatment for her rapidly deteriorating mental health.

105.     At around this time, Czernyk also found the strength to make a formal complaint of sexual assault to Fordham University's Title IX Office as well as file a police report.[6]

106.     In response to Czernyk's complaints, Defendant retaliated against Plaintiff and did everything he could to keep her quiet.

107.     During Fordham's investigation in Spring 2021, Defendant falsely accused Plaintiff of defaming his character to pressure her to drop her complaint.

108.     In April 2021, Czernyk began seeing an EMDR (Eye Movement Desensitization and Reprocessing) psychotherapist to treat the Post-Traumatic Stress Disorder ("PTSD") and severe emotional distress she was experiencing.

109.     In mid-April 2021, Czernyk saw Defendant at a party. Even though Fordham had issued a "no-contact" order, mandating that Defendant avoid all contact with Czernyk, Defendant approached Czernyk at a party and put his hands up to her chest in a threatening manner.

110.     Czernyk became overwhelmed and emotionally distressed, Defendant made her feel unsafe, uncomfortable, and forced her to relive the trauma of the assault.[7]

111.     By May 2021, Czernyk's emotional distress stemming from Defendant's rape made it impossible for her to complete her coursework. She was unable to graduate on time.[8]

---

[6]     The Bronx police department declined to investigate Czernyk's complaint for reasons that were not made clear. On a similar note, while Fordham University investigated Czernyk's allegations, its ultimate decision to find Defendant not liable was clearly biased and unsupported by the testimony and evidence it had discovered.
[7]     Defendant faced no consequences for violating the "no contact" order.
[8]     Thankfully, Czernyk was eventually able to graduate from Fordham (albeit with a lower grade point average that she had maintained throughout her previous years at Fordham). However, because of her poor mental health, she was unable to work, and she had to put her career on the backburner.

13

INDEX NO. 814444/2021E
RECEIVED NYSCEF: 11/05/2021

112.     Also in Summer 2021, Defendant threatened Plaintiff that he would file a lawsuit against her and "come after" members of her family if she proceeded to speak about the rape.

113.     Plaintiff was terrified of what Defendant was capable of, and this fear compounded her trauma. However, she refused to give up.

114.     In July 2021, upon having suicidal ideation, Czernyk institutionalized in an in-patient psychiatric facility.

115.     In August 2021, Plaintiff again sought psychiatric help to address the symptoms of her depression and anxiety and started seeing a psychiatrist.

116.     Since beginning her treatment, Czernyk has been diagnosed with severe depression and anxiety, as well as PTSD.

117.     To this day, Czernyk continues to have PTSD about Defendant and disturbing and intrusive thoughts and memories of the sexual assault.

### <u>FIRST CAUSE OF ACTION:</u>
**Sexual Assault & Battery, Rape, Criminal Sexual Act, Aggravated Sexual Abuse**

118.     Plaintiff repeats and realleges all facts set forth above.

119.     By his conduct, as described herein, Defendant sexually assaulted and battered Plaintiff.

120.     Defendant assault and battery above constitutes rape in the first degree as defined in N.Y. Penal Law § 130.35, a criminal sexual act in the first degree as defined in N.Y. Penal Law § 130.50, and aggravated sexual abuse in the first degree as defined in N.Y. Penal Law § 130.70. Defendant battered Plaintiff when he unlawfully sexually assaulted Plaintiff by having sexual intercourse with her body while she was incapacitated and without her consent.

INDEX NO. 814444/2021E
RECEIVED NYSCEF: 11/05/2021

121.    As a result of said conduct, Plaintiff suffered injury and experienced emotional suffering and distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and significant economic damages.

122.    Defendant acted carelessly, recklessly and/or intentionally and knew that his actions against Plaintiff constituted assault, causing her apprehension of harmful or offensive contact.

123.    In addition to being intentional and deliberate, Defendant's sexual assault and battery of Plaintiff has the character of outrage associate with crime, thereby entitling Plaintiff to an award of punitive damages.

124.    Therefore, Defendant is liable to Plaintiff for emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, and disbursements.

## SECOND CAUSE OF ACTION:
### NYC Victims of Gender-Motivated Violence Act

125.    Plaintiffs repeats and realleges all facts set forth above.

126.    The above-described conduct of Defendant's constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff as defined in NYC Admin Code § 8-903.

127.    The above-described conduct of Defendant constitutes a "crime of violence" against Plaintiff motivated: (i) by her gender; (ii) on the basis of her gender; and/or (iii) due, at least in part, to an animus based on gender.

128.    By forcibly having sex with Plaintiff when she was incapable of giving consent, Defendant engaged in crimes of violence as defined in the New York City Administrative Code Section 8-903. Having sexual intercourse as well as oral sex with Plaintiff without her consent

INDEX NO. 814444/2021E
Case 1:21-cv-10429-JGK    Document 2-2    Filed 12/08/21    Page 17 of 19
RECEIVED NYSCEF: 11/05/2021

constitutes sexual misconduct, a class A misdemeanor, and a violation of New York Penal law §

130.20.

129.    Defendant's crimes of violence were motivated by Plaintiff's gender as defined in the

New York city Administrative Code §8-903, as evidenced by the facts set forth above,

Defendants forceful way in which he treated Plaintiff because she is a woman.

130.    As a direct and proximate result of the aforementioned gender-motivated violence,

Plaintiff has sustained in the past and will continue to sustain, monetary damages, physical

injury, pain and suffering, and serious psychological and emotional distress, entitling her to an

award of compensatory damages.

**<u>THIRD CAUSE OF ACTION:</u>**
**Intentional Infliction of Emotional Distress**

131.    Plaintiffs repeats and reallege all facts set forth above.

132.    Through the conduct described herein, including but not limited to the sexual assault,

Defendant intentionally inflicted emotional distress upon Plaintiff.

133.    Defendant's conduct as described herein was so outrageous in character, and extreme in

degree, as to go beyond the bounds all possible bounds of decency and to be regarded as

intolerable in a civilized society.

134.    In addition to being intentional and deliberate, Defendant's intentional infliction of

emotional distress has the character of outrage associated with crime, thereby entitling Plaintiff

to an award of punitive damages.

135.    Therefore, Defendant is liable to Plaintiff for emotional distress and other compensatory

damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs

and disbursements.

INDEX NO. 814444/2021E

RECEIVED NYSCEF: 11/05/2021

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 18 of 19

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant her the relief requested as follows:

a.      An award of damages to be determined at trial to compensate Plaintiff for all monetary and non-monetary and compensatory harm, including but not limited to compensation for her medical treatment, pain and suffering, PTSD, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;

b.      An award of punitive damages, in an amount to be determined at trial, sufficient to deter Defendant from engaging in future illegal and/or wrongful conduct.

c.      An award of costs that Plaintiff incurred in this action, as well as her reasonable attorney's fees, to the fullest extent permitted by State and local law; and

d.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:        Brooklyn, New York
              November 5, 2021

Hilary J. Orzick
Crumiller P.C.
16 Court St, Ste 2500
Brooklyn, NY 11241
(212) 390-8480
hjo@crumiller.com
Attorneys for Plaintiff

17

INDEX NO. 814444/2021E

RECEIVED NYSCEF: 11/05/2021

Case 1:21-cv-10429-JGK   Document 2-2   Filed 12/08/21   Page 19 of 19

## ATTORNEY VERIFICATION

Hilary J. Orzick, an attorney licensed to practice in the State of New York, affirms the truth of the following under penalties of perjury:

I am an associate attorney of Crumiller P.C., attorneys for plaintiff. I have read the foregoing amended complaint and know the contents thereof, and I hereby state upon information and belief that the contents are true. The grounds for my belief are oral and written statements of plaintiffs and documents in plaintiff's file related to this matter. This verification is made pursuant to CPLR § 3020(d)(3) because plaintiff is not in the county where counsel's office is located.

Dated:      Brooklyn, New York
             November 5, 2021

Hilary J. Orzick